## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | No. 14-cr-20298-JTF-tmp |
| **ROY THOMPSON,** | )<br>) | |
| Defendant. | ) | |

_____

### REPORT AND RECOMMENDATION
_____

Before the court by order of reference is defendant Roy Thompson's Motion to Suppress, filed on December 31, 2014. (ECF No. 17.) The government filed a response in opposition on January 14, 2015. (ECF No. 18.) The court held a hearing on the motion on March 24, 2015.[1] For the reasons below, it is recommended that the Motion to Suppress be denied.

### I. PROPOSED FINDINGS OF FACT

At the suppression hearing, the government called as witnesses Memphis Police Department ("MPD") Officers Jonathan Bond and Demetric Renix. The court received as evidence a signed MPD consent to search form, a photograph of a handgun found inside the residence where Thompson was arrested, and a

___

[1]The suppression hearing was originally scheduled for February 5, 2015, and then March 3, 2015, and was continued both times at Thompson's request.

copy of Thompson's arrest ticket. The court, having carefully considered the evidence presented at the hearing, finds the officers' testimony to be credible. Therefore, the court adopts the officers' account of the events as its findings of fact.

During the early evening hours of July 19, 2013, Officers Bond and Renix, along with three other members of an MPD task force, were in their marked police vehicles conducting patrol of the Pinetree apartment complex in Memphis, Tennessee. An individual at the complex flagged down the officers and alerted them that drugs were being sold out of apartment #8. Officers Bond and Renix, along with an "Officer Graham," approached apartment #8 and knocked on the front door. The officers were dressed in uniforms that displayed "police" on the front and back. A woman in her 30s, later identified as Chaka Ford, opened the door. While standing outside, the officers could see a man, later identified as Roy Thompson, sitting on a couch inside the apartment. The officers advised Ford that they had been informed drugs were being sold from the apartment and asked if they could search the residence. Ford told the officers she was the leaseholder of the apartment and verbally consented to a search. The officers then presented Ford with a consent to search form. The form read as follows:

**CONSENT TO SEARCH**

DATE: 07/19/13

LOCATION: [XXXX] Maplelawn #8

> I, Chaka Ford, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize Officer Bond 12096 and Officer Graham 11597 of Officer Holmes 12576 to conduct a complete search of my premises located at [XXXX] Maplelawn #8.
>
> This written permission is being given by me to the above named persons voluntarily and without threats or promises of any kind.

The form was signed by Ford, as well as by Officer Renix and an "Officer Scott" as witnesses. (Ex. 1.)

Once the officers obtained Ford's consent, they proceeded to search the apartment. Officer Renix stayed in the front living room area and stood next to Thompson, who remained seated on the couch. Thompson never objected to the officers' entry into the residence or the search. Ford accompanied the officers as they searched the apartment. In the back bedroom, Officer Graham found a loaded handgun, 84 grams of marijuana in two plastic baggies, Xanax pills, and scales. Officer Graham carried the seized items into the front of the apartment, where Thompson and Officer Renix were located. Upon seeing the items, Thompson told the officers that he did not want his girlfriend to go to jail and that the items belonged to him. Officer Renix ran a warrants check and discovered that Thompson had an outstanding arrest warrant for violating his parole. Officer

Renix then placed Thompson in handcuffs.[2]  Thompson was later indicted on one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of unlawful possession of marijuana in violation of 21 U.S.C. § 844.

In his Motion to Suppress, Thompson argues that the officers violated his Fourth Amendment rights because they failed to verify that Ford had actual authority to give consent to search the apartment and they failed to obtain his consent to search.  Thompson further argues that his statement should be suppressed because the officers obtained the statement without advising Thompson of his Miranda rights.

## II.  PROPOSED CONCLUSIONS OF LAW

**A.  Consent to Search**

Thompson argues that the search of the apartment violated his Fourth Amendment rights.[3]  The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.  "[O]ur analysis begins . . . with the basic rule that 'searches conducted outside the judicial

---

[2]The entire incident took less than fifteen minutes.

[3]In his motion, Thompson asserts that "[w]hether [he] was a full-time resident [of] the house or simply an overnight guest, [he] had an expectation of privacy in the house."  (ECF No. 17 at 3.)  The government did not challenge this assertion in its response brief or at the suppression hearing.

process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.'" Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). "Those exceptions include automobile searches, consented-to searches, searches incident to arrest, seizures of items in plain view, Terry stops, the hot-pursuit rule, and searches in order to prevent the loss or destruction of evidence." Reynolds v. City of Anchorage, 379 F.3d 358, 370 (6th Cir. 2004). "If an officer obtains consent to search, a warrantless search does not offend the Constitution." United States v. Moon, 513 F.3d 527, 537 (6th Cir. 2008) (citing Davis v. United States, 328 U.S. 582, 593–94 (1946)). "An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." United States v. Jenkins, 92 F.3d 430, 436 (6th Cir. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). "Such consent, however, must be voluntary and freely given." Moon, 513 F.3d at 537 (citing Bumper v. North Carolina, 391 U.S. 543, 548–49 (1968)). "Consent is voluntary when it is 'unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion.'" Id. (quoting United States v. McCaleb, 552 F.2d 717, 721 (6th Cir. 1977)). The government has the burden of proving, by a preponderance of the evidence, that

consent to a search was voluntary through "clear and positive testimony." Id. (quoting United States v. Scott, 578 F.2d 1186, 1188–89 (6th Cir. 1978)). "Whether consent was free and voluntary so as to waive the warrant requirement of the Fourth Amendment is 'a question of fact to be determined from the totality of all the circumstances.'" United States v. Carter, 378 F.3d 584, 587 (6th Cir. 2004) (quoting Schneckloth, 412 U.S. at 227).

The court finds that Ford's consent to search the apartment was given knowingly, voluntarily, and intelligently. When Ford answered the door, the officers advised her that there had been a complaint about drugs being sold from the residence and asked her for permission to search the apartment. Ford, who appeared to be in her 30s, gave consent both verbally and by signing a consent to search form. The form stated that she was giving the officers permission to search the apartment "voluntarily and without threats or promises of any kind." At no point was Ford searched or detained, and she accompanied the officers as they conducted their search. There is no evidence of any police coercion or intimidation, nor any indication of a lack of understanding on Ford's part.

Thompson does not challenge the voluntariness of Ford's consent. Instead, he argues that the officers should have verified that Ford was, in fact, the leaseholder of the

apartment before conducting the search. The officers had no such duty, however. As the Supreme Court has explained, "determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" Illinois v. Rodriguez, 497 U.S. 177, 188-89 (1990) (quoting Terry v. Ohio, 392 U.S. 1, 21-22 (1968)) (internal quotation marks omitted); see also Georgia v. Randolph, 54 U.S. 103, 122 (2006) (noting that "it would be unjustifiably impractical to require the police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent"). The court concludes that Ford's express assertion that she was the leaseholder of apartment #8 (both verbally and in the consent to search form), coupled with the fact that she was the person who answered the door and accompanied the officers as they searched the apartment, justified the officers' reasonable belief that Ford had authority to consent to the search.

Thompson further argues that the search was unlawful because the officers never obtained his consent. "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over

the area in common with a co-occupant who later objects to the use of evidence so obtained." Randolph, 547 U.S. at 106. In Randolph, the Supreme Court created a narrow exception to this rule and held that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." Id. at 122–23; accord Fernandez v. California, 134 S. Ct. 1126, 1129 (2014) ("In Georgia v. Randolph, we recognized a narrow exception to this rule, holding that the consent of one occupant is insufficient when another occupant is present and objects to the search." (citation omitted)). However, that rule "does not extend to a 'potential objector' who stands by, mute." United States v. Kearse, No. 1:11-cr-116, 2012 WL 876774, at *5 (E.D. Tenn. Feb. 21, 2012), report and recommendation adopted 2012 WL 876774 (Mar. 12, 2012) (quoting Randolph, 547 U.S. at 121).

The Sixth Circuit Court of Appeals addressed this same issue in United States v. Stanley, 351 F. App'x 69 (6th Cir. 2009). In that case, the defendant argued that the district court erred by ruling that the defendant's girlfriend validly consented to the search of the apartment. Stanley, 351 F. App'x at 72. The defendant argued that because he was present at the apartment and the subject of the arrest warrant, the officers should have tried to obtain his consent before asking the girlfriend for her consent. Id. The court contrasted the

situation before it – where the defendant had not refused consent and was present in the apartment when the girlfriend gave her consent to search - with other cases where defendants had expressly refused to give consent. Id. (citing Randolph and United States v. Murphy, 516 F.3d 1117 (9th Cir. 2008)). Because the defendant did not refuse consent, admitted he was present in the apartment when his girlfriend gave consent, and did not object after she gave her consent, the court concluded that the officers had legal authority to search the apartment. Id. Similarly, Thompson did not refuse consent, he was present in the apartment when Ford gave her consent, and he did not object after Ford gave her consent. The court concludes that the officers' search of the apartment did not violate Thompson's Fourth Amendment rights.

**B. Thompson's Statement**

Thompson next argues that the court should suppress the statement he made upon seeing the items seized from the bedroom because he had not been informed of his Miranda rights. "Statements made by a defendant in response to interrogation while in police custody are not admissible unless the defendant has first been apprised of the constitutional right against self-incrimination and has validly waived this right." United States v. Cole, 315 F.3d 633, 636 (6th Cir. 2003) (citing Miranda v. Arizona, 384 U.S. 436, 478-79 (1966)). "To determine

- 9 -

whether an individual was in custody for Miranda purposes, [courts] must examine all of the circumstances surrounding the interrogation, but [] must ultimately determine whether the law enforcement officers restrained the suspect's freedom of movement to the degree associated with a formal arrest." United States v. Tummins, 517 F. App'x 342, 344 (6th Cir. 2013) (citing Stansbury v. California, 511 U.S. 318, 322 (1994)). "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). "'Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by' the holding in Miranda." Cole, 315 F.3d at 636 (quoting Miranda, 384 U.S. at 478).

Officers Bond and Renix credibly testified that the officers never asked Thompson any questions, other than for his name. The officers both testified that when Officer Graham emerged from the back of the residence holding the gun and drugs, Thompson spontaneously stated that he did not want his girlfriend to go to jail and that the items belonged to him. The court finds that Thompson's volunteered statement was not made in response to any form of police interrogation.

### III.  RECOMMENDATION

For the reasons above, it is recommended that the Motion to Suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

April 21, 2015
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**